Filed 4/4/14  Door to Door Storage v. Stretton CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DOOR TO DOOR STORAGE, INC., | D061822 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. 37-2009-00099046-CU-BC-CTL) |
| v. | |
| DIANE GAIL STRETTON, | |
| Defendant, Cross-complainant and Appellant. | |
| DOOR TO DOOR STORAGE, INC., | D062938 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2009-00099046-CU-BC-CTL) |
| v. | |
| DIANE GAIL STRETTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of San Diego County, Joel Pressman, Judge.  Affirmed.

Diane Gail Stretton, in pro. per., for Defendant, Cross-complainant and Appellant.

Lewis Brisbois Bisgaard & Smith, Heidi S. Inman and Christopher J. Nevis for Plaintiff, Cross-defendant and Respondent.

Defendant, cross-complainant and appellant Diane Gail Stretton, appearing in propria persona as she did in the trial court, appeals the judgment in favor of plaintiff, cross-defendant and respondent Door to Door Storage, Inc. (DTD) entered following a bench trial after the court found Stretton breached a valid and enforceable written contract with DTD, a self-service storage company, for the rental of nine storage containers that DTD housed at its warehouse in San Diego. Stretton also appeals the grant of summary judgment on her cross-complaint, after the court found the causes of action stated therein were untimely as a matter of law under the applicable statutes of limitations.

Finally, Stretton separately appeals the court's award of attorney fees and costs to DTD as a result of its determination that DTD was the prevailing party on the contract.[1]

As we explain, we reject Stretton's contentions and affirm in favor of DTD the judgment, the grant of summary judgment and the award of attorney fees and costs.

---

[1] We hereby grant Stretton's unopposed request to consolidate her appeal of the judgment and grant of summary judgment on her cross-complaint, on the one hand (D061822), and her appeal of the award of attorney fees and costs in favor of DTD, on the other hand (D062938).

FACTUAL AND PROCEDURAL OVERVIEW

In 2002, Mathew Withers dba Law Offices of Roy T. Withers, acting as the administrator of the Estate of John Richardson (collectively Withers), rented nine storage containers from DTD (rental contract). The items in the containers belonged to John Richardson. After Richardson died, Stretton signed a document titled "Request to Change Customer Title, Status and Payment Responsibility" (contract). The terms of the contract included, among others, that the "New Customer [i.e., Stretton] is bound by the terms of the [rental contract] signed by or on behalf of the Current Customer [i.e., Withers]" and that the "New Customer is responsible for each and every existing and future charge owed on the account . . . ."

Stretton took possession of the storage containers in December 2003 and made payments under the contract through the end of February 2007. In June 2009, DTD sent Stretton by certified mail a preliminary lien notice that included: an itemized statement showing an amount then due and owing of about $26,600; a statement that Stretton's right to use the storage containers would terminate on July 7, 2009 and that she would be denied access to the storage containers thereafter unless this sum was paid in full; and notice that if this amount was not paid, an owner's lien would be imposed on the stored property and it would be sold at auction, as provided for in California Business and Professions Code section 21702. The preliminary lien notice also advised Stretton that the amount due and owing would continue to increase until the amount was paid in full or the personal property was sold.

3

On July 13, 2009, DTD sent Stretton by certified mail a notice of lien sale, advising her that the personal property in the storage containers was subject to a lien in favor of DTD and would be sold after July 27, 2009 unless the lien was paid in full or unless she executed before that date a declaration under penalty of perjury in opposition to the lien sale. On or about July 20, 2009, DTD received Stretton's declaration in opposition to the lien sale.

DTD then filed the instant action pursuant to California Business and Professions Code section 21710. In the operative complaint, DTD sought: to foreclose on the lien which, through the end of September 2009, totaled about $29,700, with $19.80 being added to the total lien each day thereafter; a judgment that DTD could enforce its lien on all property contained in the storage containers; and costs of suit including reasonable attorney fees as provided in the rental contract, which terms were incorporated by reference into the contract (signed by Stretton).

Stretton in March 2011 filed a cross-complaint, asserting causes of action against DTD for breach of contract, failure to perform, breach of the implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment and emotional distress. Stretton sought compensatory damages of about $57,600 against DTD, treble damages, punitive damages and costs of suit *including* reasonable attorney fees.

In her cross-complaint, Stretton alleged she did not assume or otherwise enter into the contract, even though she admitted signing the document titled "Request to Change Customer Title, Status and Payment Responsibility." Stretton further alleged that the

4

contract was adhesive; that she had advised DTD in contemplation of taking custody of the personal property in the storage containers in December 2003 that she intended to "decrease the number of items in storage if not eliminate the need for storage altogether" by using, disposing and/or consolidating the items in storage "in order to greatly reduce or eliminate the rental charge"; that to do so, she needed the storage containers moved to Riverside, where assistance was available to her to "accomplish these tasks"; that DTD agreed to transfer at no charge to her the storage containers to a facility closer to her; and that the terms of this oral agreement would be inserted into a new rental contract that DTD would timely prepare for Stretton to sign.

Stretton also alleged in her cross-complaint that DTD "steadfastly failed and refused to transfer the storage units to a facility in or near Riverside" and "never presented [her] with a proposed written contract to memorialize their *oral agreement*." (Italics added.) As a result, Stretton alleged she was kept in the "dark" regarding the terms of the alleged new contract with DTD.

As noted, Stretton represented herself in the trial court. During the course of the litigation, Stretton filed among many others a motion requesting an accommodation pursuant to the Americans with Disabilities Act (ADA). The court granted that motion and allowed her to appear telephonically.

Trial commenced on January 23, 2012. The record shows Stretton appeared that morning by telephone and renewed her ADA motion, which sought as an accommodation to have the case transferred to Riverside and continued for 90 days. The court in

5

response noted that it previously had denied her motion to change venue to Riverside and that San Diego was the proper venue to hear DTD's action to foreclose the lien. The court also noted that the case had been pending for two years; that it already had accommodated her and she could participate in the trial via telephone; that if she was not satisfied with the cross-examination of witnesses to let the court know and it would allow her to "repeat things"; that during the course of the trial she could "immediately" email and/or send the court a facsimile in order to participate fully in the trial; that if she chose to drive to court and personally appear, which, according to the court, her doctor said she could do if she drove "for a limited amount of time," the court would accommodate her driving schedule; and that with such accommodations, and given the fact venue was proper in San Diego and it already had denied her motion to change venue, the court was unwilling to transfer the case to Riverside as an accommodation to Stretton.

The record shows the court next addressed Stretton's request for a jury trial on the lien foreclosure action. After hearing Stretton's argument for a 90-day continuance, the court granted that request but, in so doing, bifurcated the cross-complaint from the complaint, finding DTD's complaint was an action to foreclose a lien for which no jury was permitted and finding the causes of action in Stretton's cross-complaint involved an action at law for which Stretton was entitled to a jury. The court continued the trial on the cross-complaint to late May 2012; it also granted DTD's oral request to file a motion for summary judgment on the cross-complaint.

6

At the conclusion of the short bench trial, the court found it "clear" that the rental contract was "executed" and "fully performed"; that Stretton admitted to executing the contract providing for a change in "customer title status and payment responsibility"; that the contract incorporated by its terms "all the terms of the [rental] contract and the obligations of the [rental] contract"; that Stretton continued to pay under the contract for "quite a bit of time" and "then found herself falling behind" on the rent; that DTD properly provided Stretton with a preliminary lien notice and a notice of lien sale; and that "there is no justification for the nonpayment by Ms. Stretton for all of these years and that the plaintiff[] [DTD has] in fact, met [its] burden of proof pursuant to [Business and Professions Code section] 21703 in the lien form."

The court therefore found the lien on the property was perfected, and the amount then due and owing for rent and fees was about $54,000. The court ordered the lien foreclosed and judgment for DTD to enforce its lien on all property stored in the nine storage containers. The court also awarded DTD its costs, including reasonable attorney fees, subject to prove up by a memorandum of costs.

The record shows the court subsequently denied Stretton's motion to vacate and set aside the judgment in favor of DTD, finding she failed to demonstrate a "sufficient legal or factual basis for the relief requested," but granted DTD's motion for summary judgment on the cross-complaint.

In so doing, the court found that with regard to the contract-based causes of action in the cross-complaint, they were barred by the two-year limitations period set forth in

7

Code of Civil Procedure section 337, subdivision 1, which applies to a breach of an oral contract. The court further found that such causes of action were barred even if the four-year limitations period for breach of a written contract applied, as set forth in Code of Civil Procedure section 339, subdivision 1, inasmuch as Stretton waited more than eight years after the breach of either the alleged oral agreement *or* the contract to file her cross-complaint. The court also found Stretton's negligence-based causes of action were likewise barred by the applicable limitations periods.

DISCUSSION

A. *Judgment for DTD on the Foreclosure of Lien Action*

There is undisputed evidence in the record that Stretton signed the contract with DTD in December 2003; that she made timely payments to DTD through February 2007; that she ceased making payments thereafter because she could no longer afford the payments; that when she signed the contract in December 2003 the nine storage canisters were located in San Diego; that the contract expressly and unambiguously incorporated by reference the terms of the rental contract signed by Withers; that Stretton received both a preliminary lien notice (as provided in Bus. & Prof. Code, § 21703) and a notice of lien sale (as provided in Bus. & Prof. Code, § 21705) in June and July of 2009, respectively; and that DTD properly calculated what was due and owing it under the contract.

8

Rather than challenge the merits of the judgment or the substantial evidence on which it is based, Stretton instead challenges a series of rulings by the trial court that she contends render the judgment invalid. We address those seriatim.

*First*, Stretton contends the trial court erred when it bifurcated the complaint and the cross-complaint; conducted a bench trial on DTD's complaint to foreclose lien on personal property, which the court found was an equitable action; and continued the trial on Stretton's cross-complaint, which the court determined was a legal action that would be heard by a jury. We disagree.

Subdivision (b) of section 1048 of the Code of Civil Procedure provides: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States."

In actions involving both legal and equitable issues, there is a right to a jury trial on the legal issues. (*Selby Constructors v. McCarthy* (1979) 91 Cal.App.3d 517, 524.) However, "'jury trial is a matter of right in a civil action at law, but not in equity.'" (*C&K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8.)

It is well established that foreclosure of a lien, such as the action brought by DTD in its complaint in the instant case, is equitable in nature. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229 [claim to foreclose lien is equitable in nature and not subject to right to

9

trial by jury]; see also *Selby Constructors v. McCarthy*, *supra*, 91 Cal.App.3d at p. 524 [foreclosure of mechanic's lien is an equitable action to which no right to jury attaches].)

As such, we conclude the trial court did not err and properly exercised its discretion when it bifurcated DTD's complaint from Stretton's cross-complaint and conducted a bench trial on the lien foreclosure action that was the subject of DTD's complaint and continued the legal action that was the subject of Stretton's cross-complaint. (See *Connell v. Bowes* (1942) 19 Cal.2d 870, 872 [noting that if "'issues arising out of plaintiff's cause of action are equitable, and those resulting from defendant's answer and cross-complaint are legal,'" then the "'plaintiff is entitled to have the equitable issues tried by the court without a jury, and the defendant is entitled to have the legal issues submitted to a jury,'" and noting that, in such instances, it is entirely proper for the trial court to first decide the equitable issues and, if that decision also disposes of the legal ones, then there is thus "nothing for a jury to try"]; see also *Nwosu v. Uba*, *supra*, 122 Cal.App.4th at p. 1238 [noting that "[w]here plaintiff's claims consist of a 'mixed bag' of equitable and legal claims, the equitable claims are properly tried first by the court," and explaining that a "principal rationale for this approach [is] '"[w]hen an action involves both legal and equitable issues, the equitable issues, ordinarily, are tried first, for this may obviate the necessity for a subsequent trial of the legal issues"'"'].)

*Second*, Stretton contends the court erred when it refused her request under the ADA to have the case transferred to Riverside and continued for 90 days.[2] Assuming

_____

[2]  Stretton in her brief states the reason for her need for an accommodation under the ADA is confidential. Perhaps that is why she apparently did not include in the record her

10

arguendo that Stretton is a person with a disability as provided in California Rules of Court, rule 1.100,[3] we disagree the court erred and abused its discretion when it denied her such relief.

Indeed, the record in the instant case shows that the court gave Stretton an email address and a facsimile number that provided her with direct access to the court during the bench trial so that the court could immediately address any concerns or issues that arose; that the court said if she wanted to appear in person for the trial, it would accommodate her schedule for driving to and from Riverside because her doctor allegedly advised she could drive for a limited amount of time; and that, if necessary, the court would give her some leeway during the bench trial to "repeat things" if the proceedings were not "happening to [her] satisfaction."

In light of this record, we applaud the trial court for its accommodations and conclude it properly exercised its discretion when it sought to accommodate her as best as it was able to allow her to participate telephonically in the bench trial but refused her

motions requesting such an accommodation.  In any event, Stretton informed the court immediately before the bench trial began she needed the accommodation (i.e., the transfer of the case to Riverside and the 90-day continuance of the trial) because her "income was cut without notice or warning."

[3]     California Rules of Court, rule 1.100(a)(1) provides:  "'Persons with disabilities' means individuals covered by California Civil Code section 51 et seq.; the Americans With Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.); or other applicable state and federal laws.  *This definition includes persons who have a physical or mental impairment that limits one or more of the major life activities, have a record of such an impairment, or are regarded as having such an impairment*."  (Italics added.)

renewed request to transfer the entire action to Riverside, ostensibly as a result of financial hardship.

In addition, even if the court erred in refusing to accommodate Stretton's alleged disability when it rejected her request to transfer the case to Riverside, we conclude on this record that error was harmless under any standard of review, inasmuch as the record shows that Stretton submitted myriad pretrial motions and was aggressively involved in the litigation; that she extensively cross-examined the only witness DTD called in the trial; and that she testified in her own defense and gave opening and closing statements. Thus, we conclude Stretton fully participated in, and was not deprived of, a "true adversary hearing" (see *Olivera v. Grace* (1942) 19 Cal.2d 570, 577) as a result of *her* decision to participate by telephone in the short bench trial.

*Third*, Stretton contends the court prejudicially erred when at the case management conference hearing in late October 2011, it set December 30, 2011 as the motion/discovery cut off and when it refused on the day of trial to reopen discovery. Again, we disagree.

Initially, we note it is not altogether clear from the record *what* additional discovery Stretton sought; *why* she was unable to conduct such discovery in the time period provided by the court, particularly given the lien foreclosure action had been pending for about *two years* and she had been advised in late October 2011 that the discovery cut-off date was December 30, 2011; and *how* obtaining such additional discovery—despite not filing a motion to compel or seeking leave to do so—would have

12

made a meaningful difference either in the lien foreclosure action that was tried by the court that same day or in the action on her cross-complaint that was continued at her request until late May 2012.[4]

On this record, we conclude the court did not abuse its discretion when it denied Stretton's untimely request to compel further responses to yet another set of form interrogatories she propounded on DTD. (See *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 383 [noting trial court rulings on discovery issues are reviewed for abuse of discretion]; see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [noting "'[d]iscretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered,'" and noting the "'burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is

---

4      It is not clear from the record what efforts, if any, Stretton made to conduct discovery (e.g., reopen discovery) after the trial on her cross-complaint was continued from January to late May 2012. In any event, the record suggests that Stretton sought additional and/or supplemental discovery responses from DTD to form interrogatories she had propounded, contending DTD's responses were inadequate because DTD allegedly had not identified in its responses the (only) witness it ended up calling in the bench trial and because it allegedly failed to verify its responses. However, the record shows that DTD had in fact identified this witness as early as January 2010 in its response to form interrogatories *previously* propounded by Stretton and again in September 2011 when the parties exchanged trial documents. In addition, the record also shows that DTD's counsel informed the court immediately before the bench trial commenced that DTD in fact mailed the verification to Stretton and provided the court with a copy of its verification as well. When the court informed Stretton it had the verification to the discovery responses in front of it, the record shows Stretton responded by arguing that DTD's delay in providing the verification was "highly prejudicial" to her and "impair[ed her] ability to prepare for trial." However, Stretton did not then, nor does she on appeal, explain in any detail *how* the lack of a verification actually prevented her from preparing for trial, nor do we perceive how this could be the case on this record.

13

shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power'"].)

B.  *Summary Judgment for DTD on Stretton's Cross-Complaint*

Stretton next contends the trial court erred when it granted summary judgment in favor of DTD based on the applicable statute of limitations.  Specifically, she contends the court erred when it applied the two-year limitations period applicable to actions for breach of oral agreement (see Code Civ. Proc., § 339, subd. 1), rather than the four-year limitations period that applies to actions for breach of a written agreement (see Code Civ. Proc., § 337, subd. 1).  Alternatively, she contends the court erred when it refused to find the applicable limitations periods were equitably tolled.

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.  [Citation.]"  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (o)(2); see also *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850.)  If the defendant makes such a showing, the burden shifts to

14

the plaintiff to demonstrate the existence of a triable issue of one or more material facts as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co*, *supra*, at pp. 850-851.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . ." (*Id*. at p. 853.)

On appeal from the entry of summary judgment, "[w]e review the record and the determination of the trial court de novo." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; see *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

In our review of the cross-complaint, we note Stretton unambiguously alleges the existence of an oral contract between herself and DTD that arose in December 2003 *before* she signed the contract with DTD. We note Stretton incorporated these allegations into each of her contract-based causes of action.

15

However, we conclude that regardless of whether the two- or the four-year limitations period applies, DTD satisfied its initial burden to show there is a complete defense to each contract-based cause of action asserted by Stretton in her cross-complaint.  (See Code Civ. Proc., § 437c, subd. (o)(2).)  Indeed, the record shows that even if we took Stretton at her word (and thus ignored the allegations in her cross-complaint regarding the existence of an oral agreement) and applied the four-year limitations period set forth in Code of Civil Procedure section 337, subdivision 1 governing a breach of a written contract, Stretton had until December 2007, at the latest, to file her action against DTD based on the contract she signed with DTD in December 2003.  The record further shows that Stretton did not file her action against DTD until March 2011, more than three years *after* the expiration of the four-year limitations period.

As such, the burden then shifted to Stretton to demonstrate the existence of a triable issue of one or more material facts as to the statute of limitations defense to her contract-based causes of action.  (See *Aguilar v. Atlantic Richfield Co*, *supra*, 25 Cal.4th at pp. 850-851.)

We reach the same conclusion based on a similar analysis with respect to her infliction of emotional distress claims in the cross-complaint.  Liability for intentional infliction of emotional distress requires a showing of extreme and outrageous behavior beyond all bounds of decency.  (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946, disapproved on another point in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn.

16

4.) The conduct must have been committed with the intention of causing, or reckless disregard of the probability of causing, emotional distress, and the plaintiff must have suffered severe emotional distress as a result. (*Agarwal v. Johnson*, *supra*, at p. 946.) A two-year statute of limitations applies to causes of action for intentional *or* negligent infliction of emotional distress. (See generally Code Civ. Proc., § 335.1 & *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1450.)

Here, our independent review of the cross-complaint shows Stretton alleged DTD "engaged in outrageous conduct" when it "fail[ed] to prepare a new storage contract incorporating the oral contract obligating Cross[-]Defendant [DTD] to transfer the storage units to a facility in or near Riverside, to physically transfer the storage units to a facility in or near Riverside, and to provide the information concerning accessing and transferring the storage units." Stretton further alleges she stopped making payments under the contract in February 2007.

Thus, even giving Stretton every benefit of the doubt that DTD allegedly engaged in outrageous conduct as a result of its failure to memorialize or perform the alleged oral agreement dating back to December 2003,[5] which clearly had become known to Stretton at the latest in February 2007 when she thereafter stopped making payments under the

---

5      We note our Supreme Court has taken a "circumspect approach to attaching tort liability to conduct occurring in the course of contract performance." (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 996.) The *Robinson* court explained that the "reason for this justifiable circumspection is the value commercial parties place on predictable potential costs and the chilling effect tort exposure in routine breach cases would have on commercial enterprise. [Citations.] . . . Restricting parties to contract damages in the wide run of cases 'promote[s] contract formation by limiting liability to the value of the promise.' [Citation.]" (*Ibid.*)

17

contract, it is clear that DTD also has satisfied its initial burden to show her emotional distress-based claims are barred by the applicable two-year limitations period because, as noted, Stretton filed her cross-complaint in March 2011.

Stretton in response contends the applicable limitations periods for her contract and emotional distress claims were subject to equitable tolling because, according to her, it would be "fundamentally unfair to permit DTD to sue [her] under Code of Civil Procedure section 337 but not permit [her] to sue DTD under the same statute," inasmuch as "DTD sued Stretton for alleged breach of the very same written instrument of which Stretton base[d] her cross-complaint."

Under the doctrine of equitable tolling, a court may "suspend or extend the statute of limitations as necessary to ensure fundamental practicality and fairness." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370.) Application of the equitable tolling doctrine requires (1) timely notice of the claim to the defendant within the statutory period, (2) lack of prejudice to the defendant in gathering and preserving evidence for its defense, and (3) reasonable and good faith conduct on the part of the plaintiff in pursuing the claim. (*Addison v. State of California* (1978) 21 Cal.3d 313, 316; *Downs v. Department of Water & Power* (1997) 58 Cal.App.4th 1093, 1100.) We review a trial court's decision to grant or deny equitable relief for abuse of discretion. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

Here, we note the absence of evidence in the record to support Stretton's equitable tolling contention. In addition, we reject the logic of Stretton's contention that merely

18

because DTD timely filed its lien foreclosure action she somehow was excused from her own obligation to file timely an action against DTD, whether based on a breach of an oral or written contract or on conduct she contends was outrageous and caused her severe emotional distress. We thus independently conclude the trial court properly granted summary judgment in favor of DTD on Stretton's cross-complaint.

C. *Attorney Fees*

Finally, Stretton contends the court erred in awarding DTD reasonable attorney fees and costs because, among other contentions, she was not a signatory to the document containing the attorney fees clause.

"On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs . . . have been satisfied amounts to statutory construction and a question of law. [Citations.] [¶] Stated another way, to determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the [contract], and the facts are not in dispute, such review is conducted de novo. [Citation.] Thus, it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo. [Citations.]" (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

19

Consistent with these principles, as we have noted, the contract signed by Stretton in December 2003 expressly stated that the "New Customer" (i.e., Stretton) was bound by the terms of the rental agreement signed by the "Current Customer" (i.e., Withers). Our independent review of the record shows that the original rental agreement included an attorney fees clause. Stretton herself was clearly aware of this clause and Civil Code section 1717—providing that, in an action on a contract that includes such a clause, the prevailing party is entitled to an award of such fees and costs, inasmuch as she *also* sought to recover reasonable attorney fees in her cross-complaint against DTD. We thus independently conclude the award of attorney fees was warranted in the instant case.

Turning to the next issue, we conclude the trial court properly exercised its discretion when it awarded DTD reasonable attorney fees and costs of $36,916.50 and $700.75, respectively. It is axiomatic that the "'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) "In reviewing a challenged award of attorney fees and costs, we presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure. [Citation.]" (*Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 621.)

"In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged,

with a sufficient argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)  "'It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error.'"  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141.)

The record in the instant case contains more than sufficient evidence to support the award of fees and costs, including a detailed description of the hourly rates charged by attorneys and paralegals retained by DTD that worked on the case and the number of hours worked and the tasks completed in what turned out to be a highly-contentious and lengthy matter between the parties.  We thus conclude Stretton has not satisfied her burden to show the trial court abused its discretion regarding the amount of fees and costs it awarded DTD as the party prevailing under the contract.

## DISPOSITION

We affirm in favor of DTD the judgment, the grant of summary judgment and the award of attorney fees.  DTD is awarded its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

McDONALD, J.

21